[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15283
Non-Argument Calendar

_____

Agency No. 3-17925

DAVID A. ELGART,

Petitioner,

versus

SECURITIES AND EXCHANGE COMMISSION,

Respondent.

_____

Petition for Review of a Decision of the
Securities and Exchange Commission

_____

(September 19, 2018)

Before MARTIN, JILL PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

David Elgart petitions for review of a final order of the Securities and Exchange Commission ("SEC") sustaining a disciplinary action brought against him by the Financial Industry Regulatory Authority ("FINRA").  On appeal, Elgart challenges the SEC's conclusion that he acted "willfully" in failing to disclose -- on his Uniform Application for Securities Industry Registration or Transfer ("Form U4") -- outstanding tax liens.  No reversible error has been shown; we deny the petition.

Elgart began working in the securities industry in 1971.  In 1998, Elgart became the president and chief compliance officer of Sequoia Investments, Inc., a small broker-dealer and FINRA member.  As a registered securities representative and principal with FINRA, Elgart was required to file -- and to keep current -- a Form U4.  The Form U4 requests detailed information about an applicant's personal, employment, disciplinary, and financial background.  In pertinent part, question 14M of the Form U4 asks: "Do you have any unsatisfied judgments or liens against you?"  When Elgart first began his employment with Sequoia in 1998, he responded "no" to this question on his Form U4.

2

Between 2003 and 2010, Elgart became the subject of several tax liens, including three federal tax liens and two State of Georgia tax liens: totaling $388,755.98. Elgart testified that he received notice of each lien at or about the time it was issued. In January 2013, Elgart met with a tax lawyer who also notified Elgart about the number and amount of the outstanding tax liens.

Meanwhile, in the ten years following the filing of the first tax lien in July 2003, Elgart amended his Form U4 thirteen times. Four of these amendments were filed after Elgart met with his tax lawyer in January 2013. Elgart's response to question 14M remained unchanged.

As part of a routine examination of Sequoia in late 2013, FINRA staff asked Elgart to complete a Personal Activity Questionnaire ("PAQ"). Question 21 of the PAQ asked: "Do you have any unsatisfied judgments or liens against you? If yes, provide detail as to each." Elgart completed and signed the PAQ in November 2013; Elgart responded "no" to Question 21, without further explanation.

In December 2013, FINRA contacted Elgart about discrepancies between the responses on his Form U4 and PAQ and the results of a record search that revealed the outstanding tax liens. On 23 December 2013, Elgart amended his Form U4 to disclose the tax liens. In that filing, Elgart reported that he first

3

learned of each lien on 1 January 2013.  Despite requests by FINRA staff, Elgart filed no amendments to his PAQ to disclose the tax liens.

In November 2015, FINRA's Department of Enforcement filed a complaint against Elgart, alleging Elgart violated FINRA by-laws and Rule 1122 and Rule 2010 by (1) failing to disclose timely his tax liens on his Form U4, and (2) making a false statement to FINRA on his PAQ by denying the existence of the liens.  A FINRA Hearing Panel found that Elgart committed the alleged violations and that his failure to amend his Form U4 had been willful.  The Hearing Panel suspended Elgart for a total of seven months from associating with a FINRA member firm and imposed a fine of $20,000.  Elgart appealed to FINRA's National Adjudicatory Council ("NAC"), which affirmed the Hearing Panel's decision.

Elgart then petitioned the SEC to review the NAC decision.  In pertinent part, the SEC determined that Elgart's failure to amend his Form U4 had been willful and that he was therefore subject to statutory disqualification.  In doing so, the SEC rejected Elgart's contention that he misunderstood the scope of the disclosure required by question 14M.

In reviewing the SEC's decision, we treat the SEC's factual findings as conclusive as long as they are "supported by substantial evidence."  15 U.S.C. § 78y(a)(4); ZPR Inv. Mgmt. v. SEC, 861 F.3d 1239, 1248 (11th Cir. 2017).

4

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ZPR Inv. Mgmt., 861 F.3d at 1248 (quotations omitted). "The substantial evidence standard limits the reviewing court from deciding the facts anew, making credibility determinations, or re-weighing the evidence." DeKalb Cnty. v. United States DOL, 812 F.3d 1015, 1020 (11th Cir. 2016). Under this standard of review, "we will reverse such findings only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough." Id.

On appeal, Elgart challenges only the SEC's finding that he acted willfully in failing to disclose his tax liens on his Form U4 and, thus, was subject to statutory disqualification. Elgart raises no challenge to the SEC's determination that he failed to update timely his Form U4, that the omissions on his Form U4 were material, that he submitted false information on his PAQ, or that his conduct violated FINRA Rules 1122 and 2010 and FINRA's by-laws.

A person acts "willfully" within the meaning of the federal securities laws if he "intentionally committed the act which constitutes the violation." ZPR Inv. Mgmt., 861 F.3d at 1255 (alteration omitted). A person "need not also be aware that he is violating one of the Rules or Acts." Id. (quotation omitted).

5

Substantial evidence supports the SEC's finding that Elgart acted willfully in failing to disclose his outstanding tax liens on his Form U4.  Elgart was aware of his continuing obligation to amend his Form U4 to reflect changes to his reported answers.  Elgart testified that he learned of the tax liens shortly after each lien was issued.  Elgart also discussed his outstanding tax liens with his tax lawyer in January 2013.  Despite his having knowledge of the tax liens, Elgart testified that he decided not to report the tax liens on his Form U4 because the liens were filed against him personally, and not against the firm.  Because Elgart's decision not to disclose his tax liens on his Form U4 was an intentional act, sufficient evidence exists to support a determination that his conduct was willful.

Elgart contends, however, that his failure to disclose the tax liens was inadvertent -- and not willful -- because it stemmed from his misunderstanding that question 14M applied only to outstanding liens or judgments "that could endanger or impact the firm and its clients."  Because the tax liens were filed against Elgart personally, he says he believed mistakenly that he was under no obligation to report them.

We are unpersuaded by this argument.  The Hearing Panel determined -- based on Elgart's demeanor at the hearing and on the evidence presented -- that Elgart's testimony that he misunderstood question 14M was not credible.  The SEC

6

then deferred to the Hearing Panel's credibility determination. Elgart raises no challenge to the adverse credibility finding on appeal, and we defer to the agency's credibility determination absent substantial evidence to the contrary. Cf. DeKalb Cnty., 812 F.3d at 1020; Daniel D. Manoff, 55 S.E.C. 1155, 1162 & n.6 (2002) (credibility determinations may "be overcome only when there is 'substantial evidence' for doing so.").

Because no substantial contrary evidence exists, we defer to the agency's adverse credibility determination in this case. The credibility determination is also supported by the unambiguous language of question 14M, Elgart's inconsistent testimony about when he first learned of the tax liens, and that Elgart's purported misunderstanding of question 14M conflicted with his testimony that he was unaware of the contents of Form U4.

Elgart contends that the SEC's willfulness determination is contrary to the Hearing Panel's decision in Dep't of Enf't v. Harris, Disciplinary Proceeding No. C07010084 (NASD May 31, 2002), and to the Second Circuit's decision in Mathis v. SEC, 671 F.3d 210 (2d Cir. 2012). In Harris, the Hearing Panel determined that the respondent's failure to disclose a prior misdemeanor on his Form U4 was not "willful" when the omission resulted in part from a misreading of the question.

7

Harris is distinguishable from this case, however, because (among other reasons) the Hearing Panel credited the respondent's testimony.

Elgart cites to language in the Mathis opinion that says that "an inadvertent filing of an inaccurate form" is insufficient evidence of willfulness.  See Mathis, 671 F.3d at 218.  But the Mathis decision is not inconsistent with the SEC's "willfulness" determination in this case.  Instead, the Second Circuit concluded that sufficient evidence supported a finding of "willfulness" because the respondent -- like Elgart -- denied having unsatisfied judgments or liens against him even though he had received IRS notices and was, thus, aware of his outstanding tax liens before filing his Form U4.  See id.

We reject Elgart's contention that FINRA's application of the willfulness standard is inconsistent and "so vague" that it provides no guidance and deprives its members and associated persons of "fair procedure."  The willfulness standard applied in this case is consistent with the standard that has long been applied by the SEC and by federal appellate courts.  See, e.g., Tager v. SEC, 344 F.2d 5, 8 (2d Cir. 1965) ("It has been uniformly held that 'willfully' in this context means intentionally committing the act which constitutes the violation.  There is no requirement that the actor also be aware that he is violating one of the Rules or Acts."); Mathis, 671 F.3d at 218 (citing Tager); ZPR Inv. Mgmt., 861 F.3d at 1255.

8

Moreover, a finding of willfulness is dependent on the facts and circumstances of each individual case. Elgart has cited no case with materially similar facts in which the willfulness standard was applied differently than in this case. Among other things, each of the cases Elgart relies upon involved a settlement. We have said the SEC abuses no discretion in imposing lesser sanctions as a reward for settlement. See Orkin v. SEC, 31 F.3d 1056, 1067 (11th Cir. 1994).

Substantial evidence supports the SEC's determination that Elgart acted intentionally in failing to disclose his tax liens on his Form U4 and, thus, that his conduct was willful. We are not compelled to reverse that finding on appeal.

PETITION DENIED.

9